DAVID SHONKA
Acting General Counsel

Ethan Arenson, DC # 473296
Carl Settlemyer, DC # 454272
Philip Tumminio, DC # 985624
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2204 (Arenson)
(202) 326-2019 (Settlemyer)
(202) 326-2004 (Tumminio)
(202) 326-3395 *facsimile*
earenson@ftc.gov
csettlemyer@ftc.gov
ptumminio@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

Federal Trade Commission,

Plaintiff,

v.

Pricewert LLC also d/b/a 3FN.net, Triple Fiber Network, APS Telecom, APX Telecom, APS Communications, and APS Communication,

Defendant.

Case No. C09 02407 RMW

COMPLAINT FOR PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF; EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER AND RELATED PAPERS

DOCUMENTS SUBMITTED UNDER SEAL

RECEIVED

JUN - 1 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Complaint; Request for TRO;
Related Papers

DAVID SHONKA
Acting General Counsel

Ethan Arenson, DC # 473296
Carl Settlemyer, DC # 454272
Philip Tumminio, DC # 985624
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2204 (Arenson)
(202) 326-2019 (Settlemyer)
(202) 326-2004 (Tumminio)
(202) 326-3395 *facsimile*
earenson@ftc.gov
csettlemyer@ftc.gov
ptumminio@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

| | |
|---|---|
| **Federal Trade Commission,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Pricewert LLC also d/b/a 3FN.net, Triple Fiber Network, APS Telecom, APX Telecom, APS Communications, and APS Communication,**<br><br>**Defendant.** | Case No. _____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint against Pricewert LLC also d/b/a 3FN.net, Triple Fiber Network, APS Telecom, APX Telecom, APS Communications, and APS Communication, alleges as follows:

1. The Commission brings this action pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive relief against defendant Pricewert LLC to prevent it from engaging in unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and to obtain other equitable relief, including rescission, restitution, and disgorgement, as is necessary to redress injury to consumers and the public interest resulting from defendant's violations of the FTC Act.

Complaint    Page 1 of 8

## JURISDICTION

2. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

## VENUE

3. Venue in the United States District Court for the Northern District of California is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

## INTERDISTRICT ASSIGNMENT

4. The events and omissions that give rise to this law suit have occurred and are occurring in Santa Clara county, where the defendant's computer servers are located. Accordingly, this matter is appropriate for referral to the San Jose Division.

## PLAINTIFF

5. Plaintiff, the Federal Trade Commission, is an independent agency of the United States government created by statute. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers, consumer redress, and disgorgement.

## DEFENDANT

6. Defendant Pricewert LLC also d/b/a 3FN.net, Triple Fiber Network, APS Telecom, APX Telecom, APS Communications, and APS Communication ("Pricewert") is an Oregon limited liability company, which lists its principal place of business as 35 Barrack Road, Belize City, Belize. Pricewert transacts or has transacted business in this District.

## COMMERCE

7. At all times relevant to this complaint, Pricewert has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS PRACTICES

8. Pricewert operates as a "rogue" or "black hat" Internet Service Provider that recruits, knowingly hosts, and actively participates in the distribution of illegal, malicious, and harmful electronic content.

9. Operating under the names "3FN.net," "Triple Fiber Network," "APS Telecom," "APX Telecom," "APS Communications," and "APS Communication," Pricewert controls thousands of computer servers, many of which are located in this District. Third parties pay Pricewert to host their illegal, malicious, and harmful electronic content.

10. Although Pricewert is an Oregon corporation, its principals and senior staff are located outside of the United States. Pricewert operates in the United States for the sole purpose of taking advantage of the low cost and high reliability of United States Internet infrastructure.

<u>Pricewert Recruits and Willingly Distributes Illegal, Malicious and Harmful Content</u>

11. Pricewert markets its services to domestic and overseas criminals by placing ads in the darkest corners of the Internet, including forums set up to facilitate communication between criminals.

12. As a result of Pricewert's marketing efforts and its willingness to host content that legitimate ISPs will not, Pricewert's servers have become one of the leading U.S.-based havens for illegal, malicious, and harmful content.

13. Pricewert hosts very little legitimate content and vast quantities of illegal, malicious, and harmful content, including child pornography, botnet command and control servers, spyware, viruses, trojans, phishing-related sites, illegal online pharmacies, investment and other web-based scams, and pornography featuring violence, bestiality, and incest.

14. Pricewert is fully aware that it is hosting huge volumes of illegal, malicious, and harmful content. Moreover, Pricewert actively shields its criminal clientele by either ignoring take-down requests issued by the online security community or shifting its criminal clients to other Internet Protocol addresses controlled by Pricewert so that they may evade detection.

## Pricewert's Direct Involvement In Activity That Harms Consumers

15. In addition to hosting illegal, malicious, and harmful content, Pricewert actively colludes with its criminal clientele in several areas, including the maintenance and deployment of botnets.

16. A botnet is a collection of computers, known as "zombie drones," that have been compromised by malicious code. Once infected, the compromised computers accept and execute orders from the originator of the infection, known in Internet parlance as the "bot herder."

17. In order to command his army of compromised computers, the bot herder utilizes a computer server known as a "command and control" server. Upon being compromised by malicious code, infected computers are instructed to communicate with the command and control sever and follow whatever instructions are received.

18. By relaying commands through the command and control server, the bot herder is able to remotely control a vast network of compromised computers. Without any outward indication to the owners of the zombie drones, the bot herder can, *inter alia*, monitor the activities of the computers' users, steal information entered into the computers including sensitive financial and other data, infect the computers with other types of malicious code, and/or use the computers to conduct illegal activity that, if detected, appears to originate from the unsuspecting owners of the infected computers.

19. In addition to the harm inflicted upon the owners of the compromised computers, botnets cause massive consumer injury to the public at large.

20. Botnets, for example, are the vehicle of choice for criminals seeking to send unsolicited email, commonly known as spam. Experts estimate that up to 85% of all spam originates from compromised computers that have been conscripted into botnets.

21. Bot herders also use or rent their botnets to execute distributed denial of service attacks, engage in click fraud, host and facilitate malware and phishing related websites, and for many other criminal activities.

22. Pricewert's involvement in botnet activity is detailed in several Internet ICQ chat logs obtained by the FTC. In these logs, Pricewert's senior staff, including its Head of Programming, are observed directly participating in the creation and configuration of a botnet.

23. In one of the chats obtained by the FTC, Pricewert's Head of Programming is engaged in a conversation with a customer regarding the number of compromised computers the customer controls. The customer informs Pricewert that he controls 200,000 bots and needs assistance configuring the botnet. The head of Pricewert's Programming Department agrees to assist, but complains upon learning of the size of the botnet that it will require a lot of work.

24. In a second chat, a Senior Project Manager for Pricewert is told by a customer that the customer controls a massive and rapidly growing network of bots. Pricewert's Sales Director reassures the customer that "[w]ell, we know how to manage it."

**DEFENDANT'S ACTS AND PRACTICES HAVE CAUSED SUBSTANTIAL INJURY THAT CANNOT BE REASONABLY AVOIDED AND IS NOT OUTWEIGHED BY COUNTERVAILING BENEFITS TO CONSUMERS OR TO COMPETITION**

25. Consumers have suffered and continue to suffer injury from Pricewert's hosting of illegal, malicious, and harmful content, including child pornography, botnet command and control servers, spyware, viruses, trojans, phishing-related sites, illegal online pharmacies, investment and other web-based scams, and pornography featuring violence, bestiality, and incest.

26. Consumers have also suffered and continue to suffer injury from Pricewert's direct involvement in the criminal activities of its customers, including the configuration and deployment of botnets.

27. The consumer injury caused by Pricewert cannot be reasonably avoided by consumers. The malicious content hosted by Pricewert is routinely foisted upon consumers without their knowledge or permission through the use of redirects, spam, social engineering, and other tactics. Moreover, consumers whose computers have been conscripted into botnets operated via Pricewert's servers, and with Pricewert's assistance, receive no outward indication that their computers are compromised.

Complaint                                   Page 5 of 8

28. The botnets operated via Pricewert's servers and with Pricewert's assistance also cause unavoidable injury to the public at large, which is subjected to, *inter alia*, massive quantities of spam generated by the botnets.

29. There are no countervailing benefits to consumers or to competition that outweigh the harm caused by Pricewert's unlawful activity.

## COUNT ONE

### Unfair Distribution and/or Hosting of Illegal, Malicious, and Harmful Code or Content

30. In numerous instances, Pricewert has recruited and willingly distributed and/or hosted electronic code or content that inflicts harm upon consumers, including, but not limited to, child pornography, botnet command and control servers, spyware, viruses, trojans, and phishing-related sites.

31. Pricewert's actions cause or are likely to cause substantial injury to consumers that cannot be reasonably avoided and is not outweighed by countervailing benefits to consumers or competition.

32. Therefore, Pricewert's acts and practices, as described in paragraphs 7 - 29, are unfair and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

### Unfair Computer Intrusion

33. In numerous instances, Pricewert has collaborated with bot herders to configure, deploy, or operate botnets comprised of thousands of compromised computers.

34. The botnets configured, deployed, or operated by Pricewert cause or are likely to cause substantial injury to consumers that cannot be reasonably avoided and is not outweighed by countervailing benefits to consumers or competition.

35. Therefore, Pricewert's acts and practices, as described in paragraphs 7 - 29, are unfair and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

36. Pricewert's violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), as set forth

above, have caused and continue to cause substantial injury to consumers. Absent injunctive relief by this Court, Pricewert is likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

37. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including, but not limited to, rescission of contracts, restitution, and the disgorgement of ill-gotten gains, to prevent and remedy injury caused by defendant's law violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's equitable powers, requests that this Court:

1. Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order compelling Pricewert's upstream providers and data centers to disconnect Pricewert's servers from the Internet, and an order freezing assets;

2. Permanently enjoin Pricewert from violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged in this complaint;

3. Award such equitable relief as the Court finds necessary to redress injury to consumers resulting from Pricewert's violations of Section 5(a) of the FTC Act, including, but not limited to, rescission of contracts, restitution, and the disgorgement of ill-gotten gains by defendant; and

4. Award the Commission the costs of bringing this action, as well as any other equitable relief that the Court may determine to be just and proper.

Dated: June 1, 2009

Respectfully submitted:

DAVID SHONKA
Acting General Counsel

Ethan Arenson, DC # 473296
Carl Settlemyer, DC # 454272
Philip Tumminio, DC # 985624
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2204 (Arenson)
(202) 326-2019 (Settlemyer)
(202) 326-2004 (Tumminio)
(202) 326-3395 *facsimile*
earenson@ftc.gov
csettlemyer@ftc.gov
ptumminio@ftc.gov

Attorneys for Plaintiff