**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Intervenors Suren Ter-Saakov
and Tsuren LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br>　　Plaintiff, <br>　　v. <br><br>**PRICEWERT LLC** *dba* **3FN.NET, TRIPLE FIBER NETWORK, APS TELECOM, APX TELECOM, APS COMMUNICATIONS, AND APS COMMUNICATION,** <br><br>　　Defendant. | CASE NO. 09-cv-2407-RMW <br><br>**DECLARATION OF SUREN TER-SAAKOV IN SUPPORT OF EX PARTE MOTION TO AMEND TEMPORARY RESTRAINING ORDER UNDER FED. R. CIV. P. 65(b)(4)** <br><br>Date:　June 11, 2009 <br>Time:　9:00 am <br>Ctrm:　6, 4th Floor <br><br>The Honorable Ronald M. Whyte |

---

Case No. 09-cv-02407-RMW　　　　　　　　　　　　　　　TER-SAAKOV DECL. IN SUPPORT OF MOT. TO AMEND TRO

1.   I am the owner and managing principal of Tsuren LLC ("Tsuren") a New Jersey limited liability company based in Voorhees, New Jersey.  Unless otherwise stated, I have personal knowledge of the facts stated herein.

2.   Tsuren operates a lawful online business.  Tsuren focuses on three areas of business.  First, Tsuren offers a business-to-business online service, called ShopXML, which allows wholesalers, vendors, and retailers to coordinate product ordering information and product descriptions for stock goods such as laptop batteries and power adapters.  The ShopXML service is available on Tsuren's proprietary website, <shopxml.com>.

3.   Second, Tsuren manufactures laptop power supplies, which it sells on its proprietary website <denaq.com>.

4.   Finally, Tsuren provides consulting services related to online marketing for numerous large and small companies (*e.g.* Forbes).

5.   All three of Tsuren's business lines require a constant and reliable online presence and significant electronic storage capability.

6.   Accordingly, several years ago, I—on behalf of Tsuren—sought an Internet service provider to install and manage servers for Tsuren, whereby Tsuren could store the electronic data for their business lines and provide Internet connectivity to their clients.  In searching for an ISP, I came across Defendant—known then as 3FN.net.  I found Defendant to be an appealing ISP because, among other reasons, Defendant hosted their servers in a secure California facility.

7.   Since Tsuren began using Defendant's ISP services, Defendant has provided Tsuren with reliable customer support and services.  Over the course of several years, I have never noticed anything unlawful, unethical, or otherwise improper about Defendant or its services.  In fact, as Tsuren's business has increased, I have expanded Tsuren's relationship with Defendant, leasing additional servers.

8.   While Tsuren's servers are managed by Defendant, they are located at third party data facilities in San Jose, California, called Data Pipe and CRG West.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

9. Today, the entirety of Tsuren's business is located on severs managed by Defendant. If I can't access those servers, Tsuren becomes completely deprived of its business property (its electronic data and proprietary software) and its ability to conduct business and earn a livelihood.

10. On or around June 4th, I realized that I could not access Tsuren's servers. Immediately Tsuren's business lines came to a halt, as they required constant access to this data and Internet connectivity to function. Since then, I have been losing thousands of dollars each day in revenue.

11. I have communicated with representatives of the FTC in an effort to recover my data. While these representatives assured me that neither Tsuren nor I were the subject of this lawsuit, they could not give me access to my data.

12. I have also reviewed the FTC's proposed amendment to the Temporary Restraining Order. Based on my knowledge of servers and data hosting facilities, I can state this proposal will not work. One fatal problem is that the proposed amendment instructs the receiver to remove the servers from the racks of the data hosting facilities to take exclusive custody of the servers. This process will frustrate—if not make impossible—the ability to associate any server or portion of a server with a given third party. Importantly, the location of the servers in the data centers is essential information need to identify each of the servers. The FTC's proposal would be like printing out the entire hard drive of a computer onto reams of paper, mixing up all of the pages, and then trying to find a particular page. It would be that complicated.

13. The result of this lawsuit and the temporary restraining order has had a significant impact on my life and my business. I need to recover my data immediately to operate my business, pursue my livelihood, and retain my customers.

//

//

//

1   I declare under penalty of perjury under the laws of the United States that the
2   foregoing is true and correct and that this Declaration was executed this 09 day of June
3   of 2009 at Voorhees, New Jersey.

_____
Suren Ter-Saakov

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 09-cv-02407-RMW           3           TER-SAAKOV DECL. IN SUPPORT OF
                                               MOT. TO AMEND TRO